IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JANNETTE CASTRO RAMOS**<br><br>Plaintiff<br><br>V.<br><br>**TOPERBEE CORPORATION d/b/a PEARLE VISION;** unknown **INSURANCE COMPANIES X,Y&Z; WILLIAM JUARBE; JANE DOE; JOHN DOE;** as well as any Other Joint Tortfeasors.<br><br>Defendants | CIVIL NO.<br><br>CIVIL RIGHTS CLAIM FOR DAMAGES; UNDER<br>42 USC §12101; 42 USC §2000e-5;<br>29 USC §621<br><br><br>TRIAL BY JURY DEMANDED |

**COMPLAINT**

**APPEAR NOW** Plaintiff, **JANNETTE CASTRO RAMOS**, through the undersigned attorney, and hereby state, allege and request as follows:

**INTRODUCTION**

This is a civil action pursued by Plaintiff, Jannette Castro Ramos, against her former employer, Toperbee Corporation, Inc. d/b/a Pearle Vision, William Juarbe and Toperbee's insurer and against any other individual or entity whose identity is still unknown at this time, but who were responsible in all or in part for the discrimination by reason of disability and age, negation of reasonable accommodation, retaliation, wrongful termination and violation of her civil rights as guaranteed by Puerto Rico and the United States Constitution.

As it will be explained hereinafter, Plaintiff is a fifty year old woman who worked 17 years for Pearle Vision; 14 of those years at Pearle Vision of San Patricio Mall from 2000 until 2014. Plaintiff *will* prove in the time being she was discriminated by reason of her eye sight disability, discriminated by reason of her age, retaliated and forced to quit her job due to consistent negation of reasonable

accommodation as part of her known permanent eye sight disability which prevented her from working far away from her house and during night shifts for obvious safety reasons, duly mandated by her ophthalmologist in many occasions and well documented in her personal file.

The forgoing constitutes a known and preventable situation committed by her former employer. What plaintiff *only* requested from her former employer, Toperbee, was for them to enforce the same reasonable conditions, Call Vision and Luxottica (*former retail store owners at San Patricio Mall*) guaranteed to her for 17 years, that is, from 1997 until 2014. Having said that, before Toperbee acquired the retail store of Pearle Vision from Luxottica located inside the Mall of San Patricio, plaintiff was always ensured for 17 years reasonable accommodations suited at all times for her known eye sight disability.

Having said that, Plaintiffs will prove, that when Toperbee acquired the retail store from Luxottica, not only they omitted the fact of her known eye disability, which happened to be addressed many times accordingly in her employer file, but also lost or misplaced valuable information of her former personal file from Luxottica, totally inconsistent with the laws which required them to maintain them in their records.

Plaintiff will prove she was always guaranteed at Pearle Vision a reasonable accommodation due to her eye disability, but once Toperbee acquired the retail store, at all times she was negated such reasonable accommodation, retaliated, and finally cornered to such a state that she was forced to quit her job, all as part of a wrongful termination.

That said, Plaintiff will prove that quitting was the only reasonable alternative that the she had due to the onerous working conditions imposed by the employer with the purpose of inducing or forcing her to quit.

Finally, Plaintiff will prove not only that she was discriminated by reason of her disability, but also by reason of her age. Before she was terminated by her employer, Toperbee began hiring young women in their twenties with less experience as the Plaintiff, and where given salary raise and commissions, and none given to Jannette. To this day, Plaintiffs suffers the actions followed by her former employer, and takes medications to control her anxiety.

**JURISDICTIONAL BASIS AND VENUE**

1. Jurisdiction in this case arises by federal question jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(3), as Plaintiffs seeks relief under Titles I & V of the Americans with Disabilities Act, as amended, 42. U.S.C §12101 et seq.; 42 U.S.C §12111-12117; 12203 (hereinafter, ADA), which incorporates by reference sec. 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec 2000e-5.

2. Jurisdiction also arises by federal question jurisdiction under 29 U.S.C. §621, et seq. as Plaintiffs seek relief under the Age Discrimination in Employment Act (hereinafter ADEA) which is intended to alleviate serious economic and psychological suffering of people between ages 40 and 65 caused by widespread job age discrimination against them and prevent their careers cut off by unreasonable prejudice.

3. Plaintiff also invokes, pursuant to 28 U.S.C. §1367 this Honorable Courts Supplemental Jurisdiction over claims arising under Puerto Rico Law 44 of July 2, 1985, as amended, 1 PR Laws Ann. §501, et seq, (hereinafter "Law 44"), Puerto Rico Law 115 of December 20, 1991, as amended, 29 LPRA. §194, et seq, (hereinafter, "Law 115"), Puerto Rico Law 100 of June 30, 1959, as amended, 29 LPRA. §146, et seq. (hereinafter, "Law 100") and Puerto Rico Law 80 of May 30, 1976, as amended, 29 LPRA §185, et seq. (hereinafter, "Law 80")

4. All conditions precedent to jurisdiction under ADA, ADEA, and Title VII, has been complied with accordingly.

5. An employment discrimination by reason of disability and age, retaliation was duly filed before the Equal Employment Opportunity Commission (hereinafter, EEOC) on August 7, 2014 and the Notice of Right to Sue from the EEOC was received on March 12, 2015. The foregoing means this Honorable Court has jurisdiction, as we are well within the 90 day statute of limitations to file a civil suit for the instant case.

6. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391 since the events or omissions giving rise to this claim occurred in this district.

### THE PARTIES

7. Plaintiff **JANNETTE CASTRO RAMOS** (hereinafter referred to as "**PLAINTIFF**" or "**JANNETTE**") is of legal age, single, a resident of Toa Baja, Puerto Rico. Her address is Urb. Levitown C.I.48, Toa Baja, PR., 00949. Plaintiff is a qualified 50-year-old woman with a known documented permanent disability, as duly defined by the applicable statutes.

8. Defendant **TOPERBEE CORPORATION d/b/a PEARLE VISION (**hereinafter, Toperbee or defendant) is a corporation or entity organized and existing under the laws of the Commonwealth of Puerto Rico with the capacity to sue and be sued who owns and operates a Pearle Vision retail store located in the Mall of San Patricio in Guaynabo, Puerto Rico. Their current address as it appears under their documents of incorporation is PO BOX 9386, Caguas, PR., 00726. This corporation is the former employer of the plaintiff who we alleged wrongfully terminated plaintiff from her employment, discriminated against her based on her age and disability, and retaliated against her.

9. Defendant **WILLIAM JUARBE, (**hereinafter, Mr. Juarbe**)** is believed to be the owner and president of Toperbee, and is believed to operate the retail store located in the Mall of San Patricio. His current address as it appears under their documents of incorporation is PO BOX 9386, Caguas, PR., 00726. It is hereby alleged Mr. Juarbe intentionally retaliated and discriminated against Plaintiff by reason of

her age and known permanent disability. Therefore he is jointly liable for the wrongful termination of Plaintiff.

10. Defendant **unknown INSURANCE COMPANIES X, Y & Z**, (hereinafter referred to as "Insurance companies") are unknown insurance companies organized and operating under the laws of Puerto Rico and/or a state in the United States of America, with their principal place of business in Puerto which, by information or belief, each of them provided general liability insurance coverage to the foregoing Defendant **TOPERBEE,** as well to other responsible entities and persons for incidents such as the one brought in the caption case.

11. Defendants **JANE DOE** and **JOHN DOE** are unknown persons or entities which are citizens of Puerto Rico or any state, who are fictitiously named herein to be later replaced by their actual names which may become known through further discovery in this litigation, and who may be therefore liable to Plaintiff, in whole or in part, jointly or severally, for the actions and/or omissions herein described and the damages suffered by Plaintiff.

**FACTUAL ALLEGATIONS**

12. Plaintiff started working in Pearle Vision 17 years ago, that is, on May 12th, 1997, in a retail store located in Plaza Vega Baja. From the get go, this was a job that made Plaintiff happy and loved dearly.

13. Since the very first moment she was hired in 1997, Plaintiff told Pearle Vision personnel she had a permanent eye sight disability that required reasonable accommodations.  That being sad, Plaintiff suffers from permanent, irreversible optic nerve atrophy, a retinal detachment causing her to be legally blind in one eye.  She developed this condition when she turned 11 years old, and her physicians could not decipher precisely the etymology of her condition. Once again, her condition has been known to Pearle Vision since the very first moment she was hired by them back in 1997.

14. Moreover, in January 21, 2002, "Pearle Vision of Puerto Rico" wrote a letter to Plaintiff approving her solicitation to end her shift 30min earlier due to her visual disability.  More to that, such letter emphasized that Jannette's request "*was approved in accordance with the laws which mandate to look for reasonable accommodation in her working hours*."  The foregoing letter was signed by Alma Vélez, District Manager of Pearle Vision at that moment in time with a copy to, Víctor Martínez, from the Department of Human Resources.

15. By agreeing to plaintiff's reasonable accommodation request, Pearle Vision deemed plaintiff as being disabled as such term is defined under the ADA.

16. In addition, on November 29th, 2007, Dr. Valeriano Alicea Cruz, ophthalmologist, specifically stated in a progress note that "*she (referring to Plaintiff) **must** avoid driving after dusk*". (Our emphasis)

17. Therefore, during the time she worked at Pearle Vision she was supervised by various employees who, *at all times*, treated her disability with respect and guaranteed her reasonable accommodations regarding her working hours and distance between store and residence to avoid driving after dusk which promoted a risk hazard to her and the safety of others.

18. Some of this former supervisors and employees of Plaintiff were, to wit; *Betzaida Rivera* who was the first to employ the Plaintiff back in 1997 in Plaza Vega Baja and was informed of such condition without any conflict since the working hours were until 5:30pm; *Dr. Carlos Ortiz* who was Plaintiff's second general manager when she solicited transfer to Bayamón Shopping Center, and also, there was no conflict since the working hours were until 5:00pm; *Héctor Barreto* – Plaintiffs third general manager when she was transferred to Montehiedra for a very brief moment due to low sales in Bayamón retail store.

19. Jannette only worked in Monehiedra for two (2) days, since the company knew of her disability and didn't want to place her at an unreasonable risk driving after dusk to her residence in Toa Baja. Right after, due to the foregoing, she was transferred to Plaza Trujillo where she worked there for

one month and a half approximately before finally being permanently transferred to the Mall of San Patricio in Guaynabo in the year 2000 during the month of November after she was granted a solicitation for a store closer to her residence, and she stood there until her wrongful termination in 2014.

20. While working in the San Patricio Pearle Vision store, *Miguel Rodríguez*, became Plaintiff's fifth general manager, and even though the working hours where from 9:00am to 9:00pm, she was reasonably accommodated to work until 6pm, so she could drive home before dusk, to be in compliance with her disability and reasonable accommodations as stated in the 2002 letter and physician's letter aforementioned and vastly known disability to her employers.

21. Later on, Mr. Héctor Barreto, Plaintiff's former general manager for two days in Monte Hiedra Shopping Mall, was transferred to the Pearle Vision retail store located in San Patricio, and right away, he respected and complied with the reasonable accommodations Plaintiff had due to her eye sight disability.

22. Afterward, *Veronica Tirado* was made the new general manager of the Pearle Vision retail store located in the Mall of San Patricio, which petitioned the Plaintiff to revisit her physician to corroborate her left eye sight disability to be able to continue with the reasonable accommodation she was given in the past.

23. To that effect, Plaintiff duly complied with Veronica's request and once again, her accommodations were duly respected and applied after her disability was confirmed by her ophthalmologist, Dr. Valeriano, in a questionnaire provided by Luxottica for him to fill out, which he duly signed on February 2, 2010 after confirming Plaintiff's left eye disability.

24. As part of the questionnaire provided to Dr. Valeriano, the physician answered specifically that Plaintiff has a physical impairment consisting of "*very poor vision left eye due to inactive (unreadable) & now is developing dense (unreadable) left eye*"; under the major activities limited to

her he mentioned specifically "*no driving after dusk, no machinery*".  Also, to the question of expected duration of the impairment, the physician answered "*permanent*", and finally that "*she should be leaving home before dusk*"

25. Thereafter, a new general manager arrived by the name of Francisca Rivera, who once again respected and stood by the reasonable accommodation always applied to Plaintiff by former supervisors due to her eye sight disability. In fact, it's worth to mention that Francisca Rivera performed plaintiff's last performance evaluation for the year 2012, and, among the manager comments stated the following: "*Jannette Castro has a high commitment of responsibility and punctuality for the company.  Salary will be raised by 3% to be reflected on April 3rd, 2013.*"  The foregoing review was signed by Francisca Rivera on March 27, 2013.

26. In 2013, Toperbee corporation, herein the defendant, acquired from Luxottica the retail store located in the San Patricio Mall some time during the year 2013.

27. During the transition, Jazmin Orta, the general manager already under Toperbee's ownership spoke to Plaintiff with the purpose to corroborate the reason for her hourly shifts while the personal file was transferred from Luxoticca to Toperbee.

28. On June 20, 2013 Plaintiff continued working for William Juarbe, owner and president of Toperbee Corporation, which he expressed to the employees under the former ownership that he would duly commit to maintain the same benefits and reasonable accommodations as were provided by Luxottica.

29. Despite the promises made by Mr. Juarbe to the employees including Plaintiff, delicate situations started to surface towards Jannette.

30. At first, William Juarbe changed Plaintiff's working hours, where she would now end her shift at 6:30pm rather than at 6:00pm, previously applied by the former owner Luxottica.  That being said, Mr. Juarbe told the plaintiff that even though he *had* knowledge about her condition, for the time

being that would be her working hours. The change in 30 minutes increased the potential hazard of driving after dusk, especially during winter time in Puerto Rico.

31. Couple of weeks before Plaintiff filed her claim under EEOC; she had a meeting with Mr. Juarbe, where he told Jannette: "that he was only giving by faith the fact of her reasonable accommodation because he had no evidence whatsoever to prove otherwise, that she had a disability". In response to those remarks, Plaintiff right away, asked about her personal file since the information duly appeared therein, and Mr. Juarbe replied to Jannette that he had thrown away most of the stuff and documents inside her personal file deemed as unnecessary to him.

32. To that effect, Jannette on July 4, 2014, send Mr. Juarbe through his email "wj@toperbee.com", the documents which stated her disability, to wit; the aforementioned 2010 Questionnaire filled out by Dr. Valeriano evidencing her disability; the Medical Record by Dr. Valeriano and the 2007 progress note by Dr. Valeriano, all of them evidencing her disability.

33. Even though Jannette duly sent evidence of her disability, Mr. Juarbe started threatening Jannette that he would transfer her to his store located in Catalinas Mall without taking into consideration her reasonable accommodations, which her actual general manager Jazmin Orta at that moment in time refused profoundly due to the fact that she knew about her eye disability.

34. Instead of granting plaintiff's very reasonable accommodation request, Mr. Juarbe immediately began a campaign of retaliation to punish Jannette from demanding her right to reasonable accommodation, among other requests such as, to provide her with her annual evaluation and provide a copy of Topperbee's Manual which he didn't provide her until one year later.

35. Other situations emerged like the cancellation of Plaintiffs approved vacations before Toperbee purchased the store, Plaintiff being treated as a thief, being treated with disrespect and Mr. Juarbe constantly avoiding meetings with her, giving her unreasonable, biased and unwarranted warnings for things she didn't do.

36. On July 4, 2014 Janette rejected a job offer made by Mr. Juarbe, because there were no benefits and it was located in Caguas.  Then Mr. Juarbe suggested to do both tasks in the store where she worked but the burden would be too excessive to perform both tasks with excellence and her sales would be affected negatively.  Once again, Plaintiff wanted to stay as a sales woman, working with customers, as she had done for the past 17 years.

37. Plaintiff was punished for refusing to accept positions offered due to her disability that impeded her to perform those positions with excellence.  What only Plaintiff wanted, was to stay working at her current position, where she excelled constantly and loved doing.

38. Furthermore, defendant began hiring young employees in their twenties like Jazmin Orta, 28, and Mairim Nieves, 21 with less experience than the Plaintiff. There where instances where Mairim Nieves received commissions and salary raise for performance.

39. For example, on July 5, 2014, Jannette received information by Mairim Nieves that a salary raise was given to her even though she'd been working for couple of months and Mr. Juarbe had told the Plaintiff that no salary raise would be given to anyone.  Plaintiff also heard from Mairim that such promotion had to be kept under wraps due to the fact that other employees (referring to Plaintiff) were asking for a raise.

40. Also, on one occasion even though Jannette was the best sales person, the commission for performance was given to the younger employees.

41. All things considered, Mr. Juarbe having told Plaintiff there wouldn't be any promotion that year for anyone, he gave to two young employees with less than 6 month working experience a raise higher than what Plaintiff earned.

42. Moreover, according to Toperbee's Manual, any given day the sales where slow, if necessary the employer could end any employee's shift and sent home, but Mr. Juarbe decided that it would be

the employee who opens the store, in this case being always the Plaintiff. So even though the plaintiff was the best sales person, she was the one being sent home when the sales went slow.

43. Also, on July 29 and August 4 of 2014, Plaintiff began to receive "memos" without cause or merit whatsoever.

44. On August 7, 2014, realizing that her employer, Toperbee, would continue to disrespect her rights as a disabled individual, continue to retaliate against her and discriminate by reason of her age, plaintiff moved to file the corresponding discrimination/retaliation charge with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").

45. Plaintiff's EEOC charge resulted in Toperbee's retaliatory actions to increase.

46. For instance, right after Plaintiff's EEOC charge in August 7, 2014, Plaintiff was informed on September 4th, 2014 that she was going to be moved from the store located in San Patricio to another one farther away located in Plaza Del Carmen, Caguas. That action moved Plaintiff to place a second EEOC charge that same day for more retaliated actions taken against her.

47. Finally, Plaintiff got sick, and during her sick leave, defendant called Jannette to inform her she would be transferred effective immediately to Plaza Del Carmen, and she right away asked about her reasonable accommodation, but nothing was said.

48. That action was the cornerstone for Plaintiffs decision to quit her loved, highly valued and longtime job at the Pearle Vision store located in the Mall of San Patricio, since this was the only reasonable alternative Jannette had due to the onerous working conditions imposed by Toperbee. At all times herein mentioned, this action taken by Toperbee was with the only intent of inducing or forcing the Plaintiff to quit.

49. Plaintiff formally presented her letter resigning to her job on September 10th, 2014, that is, 6 days after she received the news that she was going to be transferred.

50. It is an undisputable fact that the San Patricio store, which is located in the city of Guaynabo, is much closer in distance to Plaintiff's home residence located in the town of Toa Baja than Cidra or Caguas[1]. The fact that Plaintiff had now to drive from Toa Baja to Caguas or Cidra, back and forth on a daily basis, proved to be an undue burden imposed to Plaintiff by Toperbee, which they knew or should have known about the disability Jannette had all along, well documented in her personal file and Pearle Vision itself.

51. This action previously stated, in conjunction with the other actions taken by defendant complies with the constructive discharge, protected by Puerto Rico applicable statutes abovementioned.

**FIRST CAUSE OF ACTION – DISABILITY DISCRIMINATION PURSUANT TO THE APPLICABLE PROVISIONS UNDER ADA AND PR LAW 44**

52. The factual allegations contained above are restated herein in full.

53. The events expressed herein constitute harassment and discrimination due to plaintiff's disability requests for reasonable accommodation and opposition to defendant's discriminatory practices, all in violation of ADA and Law 44.

54. Plaintiff is a capable woman with a known permanent physical impairment according to PR Law 44.

55. Law 44, states that its dispositions should be liberally interpreted in favor of persons with disabilities. See 1 LPRA 511a. In addition, according to Article 2 of Law 44, individual persons can be held liable for violation of said law.

56. Therefore, Mr. Juarbe and Toperbee are individually and jointly liable towards Plaintiff under Law 44.

57. Also, as a president and owner, Mr. Juarbe's actions are deemed as those of the defendant, Toperbee, making said party vicariously liable under ADA and the other statutory laws applicable.

---

[1] DTOP's own website illustrates the distance from Toa Baja to Caguas and Cidra is 26 and 27 miles respectively, compared to only 15 miles in distance to Guaynabo. The difference in distance is doubled.

58. When removing the previously granted reasonable accommodation and by later denying the reasonable accommodation request, defendant incurred in disability discrimination, as proscribed by Title I of the ADA and by Law 44.

59. Defendants failed to accommodate Plaintiff according to her known disability and dismissed her outright when she demanded her right for reasonable accommodation, all in violation of 42 USC 12112(b)(5)(a) and 1 LPRA 507a.

60. Defendants failed to accommodate Plaintiff, even though defendants regarded Plaintiff as a disable person limiting major life activities, according to the letter signed by Pearle Vision in 2002 and prospective actions taken, all in violation of 42 USC 12102(2) and Law 44.

61. Defendant also engaged in disability discrimination by not preserving documents, including all the factual documentation stating Plaintiff's disability.  Defendants failed to save sensitive documents from the personal file that belonged to Plaintiff.

62. In disregarding plaintiff's rights under ADA, defendant acted with such gross disregard of plaintiff's limitations and showed such a wanton lack of sensibility that would shock the conscience of reasonable minded individuals.

63. The Defendants, through their illegal harassment, discrimination by reason of age and disability and retaliation due to plaintiff's requests for reasonable accommodation due to her well documented permanent visual disability, caused damage to Plaintiff in violation of the Laws and constitution of both the commonwealth of Puerto Rico and United States of America.

64. Pursuant to the foregoing articles, defendants respond jointly and severally for the damages related herein due to their negligent and culpable actions and omissions, and/or negligent actions and omissions of their employees, agents, representatives or contractors.

65. At all times herein mentioned, it was the *duty* of the Defendants, their agents, servants, and/or employees, to provide Plaintiff with the reasonable accommodation she requested for her well documented disability.

66. At all times herein mentioned, it was the *duty* of the Defendants, to enforce the same accommodations Plaintiff had with the former owner.

67. Defendants, their agents, servants, and/or employees, intentionally *failed* to provide Plaintiff with reasonable accommodations as requested by Plaintiff.

68. The Defendants, their agents, servants, and/or employees acted negligently, carelessly, and recklessly by failing to maintain fully intact the personal file of Plaintiff transferred as part of the business transaction from Luxottica and Toperbee.

69. The Defendants, their agents, servants, and/or employees acted *negligently* for disposing with total disregard, valuable information from Plaintiffs personal file, that is, the well documented permanent disability of visual impairment she has.

70. The Defendants, their agents, servants and/or employees *breached* their duty to provide Plaintiff with a reasonable accommodation due to her known disability.

71. The Defendants, their agents, servants and/or employees *breached* their duty to Plaintiff by failing to provide her with reasonable accommodation, that being the proximate cause of Plaintiffs' decision to quit her job.

72. The Defendants, their agents, servants and/or employees had actual or constructive notice of Plaintiffs well documented disability.

73. Defendants, their agents, servants and/or employees incurred in fault for allowing the continuous discrimination, retaliation and harassment, and they are, therefore, liable for all the damages suffered by the plaintiff, Jannette.

74. Defendants, their agents, servants and/or employees knew or should have known about the well documented disability of the Plaintiff.

75. Defendants knew or should have known that transferring Jannette to a store located in Caguas or Cidra would cause her an undue burden with total disregard to her reasonable accommodations.

76. Defendants knew or should have known that Plaintiff would be unable to perform her duties if transferred to Caguas or Cidra.

77. As a direct result of the Defendants' discriminatory acts, Jannette, has suffered mental and emotional pain and distress.

78. As a direct result of the Defendants' discriminatory acts, Jannette, has altered her lifestyle, and has suffered emotional pain and suffering, loss of income and economic damages.

79. Plaintiff requests damages for violation of these provisions in excess of $1,000,000.00

**SECOND CAUSE OF ACTION – RETALIATION PURSUANT TO FEDERAL LAW AND PR LAW 115**

80. The factual allegations contained above are restated herein in full.

81. By taking materially adverse employment actions as aforementioned against plaintiff for her demanding her rights under Title I of the ADA before the pertinent agencies, defendant violated Law 115.

82. As a result of defendant's discriminatory and retaliatory actions, plaintiff suffered economic losses and emotional damages (feelings of depression, anxiety, frustration among others) that required her to take anxiety pills to control her emotions.

83. By taking materially adverse employment actions as aforementioned against plaintiff for her demanding her rights under Title I of the ADA before the employer and the pertinent agencies, defendant violated Title V of said statute.

84. As previously stated, the reasonable accommodation previously granted to the plaintiff was, inter alia, conditioned on her limitations in driving after dusk and consequently, she ended her shift on or before 6pm, whereas after her renewed request for continued accommodation with Toperbee until her wrongful termination, plaintiff has been rejected her reasonable accommodation and transferred to farther stores totally disregarding her disability, a clear act of retaliation.

85. Defendant has intentionally violated section 503 of the ADA, 42 USCA 12203, by terminating Plaintiff's employment as a result of Plaintiff's exercising rights and privileges protected by the ADA.

86. Defendant's termination of Plaintiff's employment on the basis of her well documented disability has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment life, and other non-pecuniary losses.

87. Defendant has acted maliciously and with reckless disregard of Plaintiff's state and federally protected rights by retaliating against Plaintiff, thereby entitling Plaintiff to punitive damages.

88. Law 115 provides for double compensation for violation of its provisions which are estimated in no less than $500,000.00

### THIRD CAUSE OF ACTION – UNLAWFUL TERMINATION UNDER PR LAW 80

89. The factual allegations contained above are restated herein in full.

90. The events described herein constitute a classic constructive discharge by Plaintiff's employer, Toperbee, thus they are in violation of Law 80.

91. The events describes herein constitute a discharge without just cause, all in violation of Law 80.

92. Plaintiff received evaluations in which she exceeded the requirements of her job, in fact, the last annual evaluation performed in 2013 for the year 2012, merited her for a 3% raise of her salary.

93. Defendants never complied with the progressive discipline process applicable under Puerto Rico Law before terminating Jannette.

94. Defendants pressed and forced Plaintiffs decision to quit her loved, highly valued and longtime job at the Pearle Vision store located in the Mall of San Patricio. Plaintiff had no other choice, but to present her letter of resignation due to the onerous working conditions imposed by Toperbee. At all times herein mentioned, the actions taken by Toperbee were with the intent of inducing or forcing the Plaintiff to quit.

95. Plaintiff formally presented her letter resigning to her job on September 10th, 2014, therefore, Jannette was unlawfully dismissed from her job on that same day.

96. All elements of Law 80 have been complied with, therefore, defendants owe Plaintiff the statutory severance payment according to her 17 years of employment with defendant, doing business as Pearle Vision.

97. Since Toperbee acquired a business in progress, defendant assumes all the years Plaintiff worked under the ownership of Call Vision and Luxottica. Therefore, the "*mesada*" shall be calculated according to the 17 years worked at Pearle Vision.

98. Plaintiff at the moment of her wrongful termination earned $10.22 hourly, thus, defendants owes Jannette the "*mesada*" which is a salary equivalent to 6 month of salary at the moment of her termination plus 51 weeks of work; totaling, $37,773.12.

### FOURTH CAUSE OF ACTION - PURSUANT TO THE APPLICABLE ADEA PROVISIONS AND PR LAW 100

99. All The factual allegations contained above are restated herein in full.

100. The ADEA prohibits employment discrimination against persons 40 years of age or older due to discriminatory actions against.

101. At all times herein mentioned, Toperbee discriminated against Plaintiff by reason of her age, by continuously promoting, raising salary and giving commissions to younger employees at least twenty years younger, while negating the same benefits and promotions to Janette.

102. The events described herein constitute a classic discrimination by defendant by reason of age against Plaintiff's, thus they are in violation also of Law 100.

103. Law 100 provides for double compensation for violation of its provisions which are estimated in no less than $500,000.00.

### FIFTH CAUSE OF ACTION – DIRECT ACTION AGAINST INSURER

104. The factual allegations contained above are restated herein in full.

105. The insurance companies of any named or unnamed defendants, the X,Y,Z & A Insurance Companies, are directly liable for the fault or negligence of the insured pursuant to 26 L.P.R.A. § 2001.

106. Pursuant to 26 L.P.R.A. § 2003, an action against an insurer may be brought separately or may be joined with an action against the insured.

### DAMAGES AND RELIEF

107. The factual allegations contained above are restated herein in full.

108. The economic and emotional damages referred to in the previous paragraph are estimated in an amount of no less than $1,000,000.00, which would be doubled upon application of Law 44, Law 115 and Law 100.

109. As a result of the matters pled in the previous paragraph, defendant would be taxed with punitive damages in an amount of no less than $500,000.00 so that said party is adequately punished and an example be made for all those employers who may be considering to incur in the same conduct.

110. Plaintiff is also entitled to reasonable attorney's fees assessed under the lodestar method, pursuant to 42 U.S.C. § 12205.

111.   Order the Defendant to make the Plaintiff whole by ordering payment of the damages abovementioned as follows:

   a. Damages for mental anguish and distress in excess $250,000.00

   b. statutory separation pay in the amount of $37,773.12

   c. Award the Plaintiff the cost of his action, together with reasonable attorney's fees.

**TRIAL BY JURY DEMANDED**

112.   Plaintiff hereby demands a trial by jury.

   **WHEREFORE,** Plaintiff demand judgment against Defendants jointly and severally, in the amount of no less than **two million eight hundred thousand dollars ($2,800,000.00)** as well as reasonable attorney's fees, and such further relief as to this Honorable Court may deem just and proper under the law.

   **RESPECTFULLY SUBMITTED.**

   In San Juan, Puerto Rico this 23rd day of April, 2015.

   **HERNANDEZ-OHARRIZ & SANTIAGO, P.S.C.**
   Centro Internacional de Mercadeo 1
   100 Carr. 165, Suite 612
   Guaynabo, PR 00908
   Tel: (787) 378-5630
   Fax: (787) 641-5016

   By:   s/ Edgardo Hernández
   **Edgardo José Hernández Ohárriz**
   U.S.D.C. No. 229304
   ehernandez@lawservicespr.com